UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------X

AMAURY URENA,

                    Plaintiff,

           - against -

THE CITY OF NEW YORK,
CAPTAIN LEWIS, CAPTAIN JOHN DOE,
C.O. JOHN DOE,

                Defendants.

--------------------------------------------------------------X

25 Civ. 512 (JPC) (GS)

**REPORT AND**
**<u>RECOMMENDATION</u>**

**GARY STEIN, United States Magistrate Judge:**

Plaintiff Amaury Urena ("Plaintiff" or "Urena"), proceeding *pro se*, filed a Complaint alleging violations of his federal constitutional rights under 42 U.S.C. § 1983 against the City of New York ("the City") and certain officers of the New York City Department of Corrections. (Complaint, Dkt. No. 1 ("Compl."), at 2–3). The City moves to dismiss Plaintiff's action in its entirety under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 18). For the reasons set forth below, the undersigned respectfully recommends that the City's motion to dismiss be **GRANTED**.[1]

## BACKGROUND

### A. Factual Allegations

Urena alleges that on December 25, 2023, while incarcerated at Rikers Island, he notified corrections officers that he was having chest pains and trouble

---

[1] The Honorable John P. Cronan referred this case to the previously designated magistrate judge for General Pre-Trial Purposes and Dispositive Motions on February 21, 2025. (Dkt. No. 8). The reference was reassigned to the undersigned on February 24, 2025 when the undersigned was designated as the magistrate judge in this case. (*See* Docket Entries dated Feb. 24, 2025).

breathing.  (Compl. at 4).  A "Captain Lewis" reported to Plaintiff's housing area and directed Urena to "lock in and await" medical treatment.  (*Id.*).  Plaintiff refused to do so, citing his medical emergency.  (*Id.*).

Thereafter, Urena was escorted to the intake area, where he alleges that two other officers, identified as "C.O. Doe" and "Captain Doe," instructed him to strip. (*Id.*).  Urena questioned why he was required to strip during a medical emergency, and stated that he was unable to do so given his medical condition.  (*Id.*).  Urena alleges that he was directed to strip "numerous times."  (*Id.*).

During these interactions, Urena states that he "interlocked [his] hands behind [his head] to defuse any signs of a threat."  (*Id.*).  Nevertheless, Urena alleges, Corrections Officer Doe then sprayed him "directly in [the] face with chemical agents with no provocation or justified reason."  (*Id.*).  As a result of these actions, Urena claims he has had "trouble breathing," "physical pain," and "mental pain and suffering."  (*Id.* at 5).

Based on these allegations, Urena asserts a claim for excessive force, in violation of his rights under the Eighth Amendment, against the City, Captain Lewis, Captain John Doe, and Corrections Officer Doe.  (*Id.* at 2–3).  Urena seeks compensatory damages totaling $10 million.  (*Id.* at 5).

## B. The Stipulation of Settlement and General Release in *Urena I*

In 2022, Urena brought a prior action in this District against the City and individual corrections officers, *Urena v. Shaw*, No. 22 Civ. 4679 (RA) (GS) ("*Urena I*"), similarly asserting claims for violations of his constitutional rights in connection

with a strip search of him at Rikers Island.  *See Urena v. City of New York*, No. 22 Civ. 4679 (RA) (GS), 2024 WL 4149182 (S.D.N.Y. Sept. 10, 2024) (granting defendants' motion for summary judgment except as to Urena's excessive force claim against defendant Shaw).  That case was settled prior to trial.  (*See Urena I*, Dkt. Nos. 58, 63, 64).  Urena represented himself *pro se* in connection with the settlement.  (*See id.*).[2]

In connection with the settlement of *Urena I*, Urena signed and executed a Stipulation of Settlement on or about November 1, 2024.  (Dkt. No. 26-1 ("Stip."); *see also Urena I*, Dkt. No. 63).  The Stipulation of Settlement states, *inter alia*, that:

> The City of New York hereby agrees to pay plaintiff Amaury Urena the sum of TEN THOUSAND ($10,000.00) DOLLARS in full satisfaction of all claims, including claims for costs, expenses and attorneys' fees.  In consideration for the payment of this sum, plaintiff agrees to dismissal of all the claims against the defendant and to release . . . all past and present officials, employees, representatives, and agents of the City of New York or any entity represented by the Office of the Corporation Counsel, from any and all liability, claims, or rights of action alleging a violation of plaintiff's civil rights and any and all related state law claims, from the beginning of the world to the date of the General Release, including claims for costs, expenses, and attorneys' fees.
>
> * * *
>
> This stipulation shall not be admissible in, nor is it related to, any other litigation or settlement negotiations, except to enforce the terms of this agreement.

(Stip. ¶¶ 2, 4).

---

[2] Urena was represented by counsel for about five months during the pendency of *Urena I*, until counsel's motion to withdraw was granted in April 2024.  (*Urena I*, Dkt. Nos. 14, 34).

As part of the settlement, Urena also executed a General Release on or about

November 1, 2024.  (Dkt. No. 37-1 ("Gen. Rel.")).[3]  The General Release states that:

> **KNOW THAT I, AMAURY URENA**, . . . plaintiff in the action
> entitled *Amaury Urena v. Captain Terrance Shaw, et al.*, 22 Civ. 4769
> (RA) (GS)[4] as "RELEASOR," in consideration of the payment of TEN
> THOUSAND ($10,000.00) DOLLARS to me by the City of New York,
> do hereby release . . . all past and present officials, employees,
> representatives, and agents of the City of New York or any entity
> represented by the Office of the Corporation Counsel, collectively the
> "RELEASES," from any and all liability claims, or rights of action
> alleging a violation of my civil rights and any and all related state law
> claims, from the beginning of the world to the date of this General
> Release, including claims for costs, expenses, and attorneys' fees. . . .
>
> **THIS RELEASE MAY NOT BE CHANGED ORALLY. THE
> UNDERSIGNED HAS READ THE FOREGOING RELEASE AND
> FULLY UNDERSTANDS IT.**

(Gen. Rel. at 1).

### C.  Procedural History

Urena instituted the present action, *pro se* and *in forma pauperis*, on January

15, 2025.  (Dkt. Nos. 1, 5).  Only the City has been served; the Department of

Corrections stated it was unable to identify "Captain Lewis."  (Dkt. Nos. 12, 13).

Although a *Valentin* Order was issued (Dkt. No. 7) and Corporation Counsel was

able to identify the Corrections Officer John Doe Defendant, Corporation Counsel

requested that its obligation to identify the other individual Defendants be stayed

---

[3] An unredacted copy of the General Release, which includes Urena's date of birth and social security
number, has been filed under seal at Docket Number 19-2.

[4] The ECF docket number cited in the General Release is inaccurate.  The correct ECF docket
number, as noted above, is 22 Civ. 4679.

pending resolution of this motion to dismiss. (Dkt. No. 28). The Court granted that request on June 23, 2025. (Dkt. No. 31).

On May 19, 2025, the City moved to dismiss Urena's Complaint (Dkt. No. 18) and, in support thereof, filed a memorandum of law (Dkt. No. 20 ("Def. Br.")) and a Declaration from counsel attaching, *inter alia*, the General Release from *Urena I* (Dkt. No. 19). The City argues primarily that Urena's claims are barred by the release language set forth in the *Urena I* General Release and Stipulation of Settlement (together, the "Release"). (Def. Br. at 5–7). The City also argues that the Complaint fails to adequately plead a claim for excessive force or other violation of Urena's constitutional rights. (*Id.* at 7–14).

On May 20, 2025, the Court issued an Order informing Urena that he was permitted to either file an opposition to the motion to dismiss or amend his Complaint to cure the deficiencies alleged. (Dkt. No. 22). On June 17, 2025, Urena filed a brief in opposition to Defendants' motion (Dkt. No. 26 ("Pl. Br.")), along with a Declaration attaching the Stipulation and Order of Dismissal and Stipulation of Settlement from *Urena I* (Dkt. No. 25). Urena's opposition brief sets forth several arguments as to why the Release should not be deemed to bar this action. (Pl. Br. at 4–6). On July 25, 2025, the City filed its reply brief. (Dkt. No. 32 ("Reply")).

### D. Rulings in *Urena II*, *Urena III*, and *Urena IV*

After the motion to dismiss was fully briefed, three courts in this District have issued rulings in other Section 1983 cases brought by Urena where the City moved to dismiss the action, pursuant to Rule 12(b)(6) and/or Rule 12(c), based on

the Release in *Urena I*.  *See Urena v. City of New York* ("*Urena II*"), No. 24 Civ. 1886 (JMF), 2025 WL 2390703 (S.D.N.Y. Aug. 18, 2025); *Urena v. City of New York* ("*Urena III*"), No. 25 Civ. 513 (JGK), 2025 WL 3154494 (S.D.N.Y. Nov. 11, 2025); *Urena v. City of New York* ("*Urena IV*"), No. 24 Civ. 1880 (JAV), 2025 WL 3201761 (S.D.N.Y. Nov. 17, 2025).[5]  These courts all dismissed Urena's claims on the basis of the Release, in two of the cases (*Urena II* and *Urena IV*) rejecting the same objections to enforcement of the Release that Urena makes here.  *See Urena II*, 2025 WL 2390703, at *2; *Urena III*, 2025 WL 3154494, at *2; *Urena IV*, 2025 WL 3201761, at *3–4.[6]

## LEGAL STANDARDS

### A.  Motion to Dismiss Under Rule 12(b)(6)

Under Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed for "failure to state a claim upon which relief can be granted."  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).

---

[5] Additionally, a fourth court in this District is currently considering the same issue.  *See Urena v. City of New York* ("*Urena V*"), No. 23 Civ. 6967 (JLR) (KHP).

[6] In *Urena III*, Urena did not file any opposition to the defendants' motion.  *See Urena III*, 2025 WL 3154494, at *1.

In considering a motion to dismiss under Rule 12(b)(6), the Court must "accept[] all factual allegations in the complaint as true" and "draw[] all reasonable inferences in the plaintiff's favor." *Palin v. New York Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019) (citation omitted). Courts need not, however, consider "conclusory allegations or legal conclusions couched as factual allegations." *Dixon v. von Blanckensee*, 994 F.3d 95, 101 (2d Cir. 2021) (citation omitted); *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Accordingly, the Court must "read the pleadings of a *pro se* plaintiff liberally" and construe them to raise "the strongest possible arguments that they suggest." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (cleaned up). Nonetheless, *pro se* pleadings still "must contain factual allegations sufficient to raise a 'right to relief above the speculative level.'" *Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (quoting *Twombly*, 550 U.S. at 555).

## B. Consideration of Materials Outside the Pleadings

"It is well-settled that a court may consider 'matters of which judicial notice may be taken' when deciding a motion to dismiss." *Deylii v. Novartis Pharms. Corp.*, No. 13 Civ. 6669 (NSR), 2014 WL 2757470, at *4 (S.D.N.Y. June 16, 2014) (quoting *Leonard F. v. Israel Disc. Bank of New York,* 199 F.3d 99, 107 (2d Cir.

1999)).  "[D]ismissal under Rule 12(b)(6) is appropriate if it is clear from matters of which the court may take judicial notice that the plaintiff's claims are barred as a matter of law."  *Urena IV*, 2025 WL 3201761, at *2 (citing *Twine v. Four Unknown New York Police Officers*, No. 10 Civ. 6622 (DAB) (JLC), 2012 WL 6184014, at *6 (S.D.N.Y. Dec. 12, 2012)).

"Records of prior litigation between the same parties fall within the scope of [the judicial notice] rule."  *Johnson v. City of New York*, No. 21 Civ. 10535 (VSB), 2023 WL 5629232, at *3 (S.D.N.Y. Aug. 31, 2023) (citation omitted).  "Courts in this District have applied that rule to settlement agreements and releases."  *Id.* (collecting cases); *see also Deylii*, 2014 WL 2757470, at *4 ("Settlement agreements are documents of which a court may take judicial notice in order to determine whether future claims are barred by a previous settlement. . . . '[I]f the Settlement Agreement would dispose of this matter . . . it makes no sense to deny dismissal simply because it was not referenced in the Complaint.'" (quoting *In re Refco Inc. Sec. Litig.,* Nos. 07 MD 1902 (JSR), 08 Civ. 7416 (JSR), 2012 WL 4053939, at *2 (S.D.N.Y. Aug. 8, 2012), *R&R adopted*, 2012 WL 4009175 (S.D.N.Y. Sept. 12, 2012))).

Applying these principles, the courts in *Urena II*, *Urena III*, and *Urena IV* took judicial notice of the Stipulation of Settlement and General Release between Urena and the City dated November 1, 2024.  *See Urena II*, 2025 WL 2390703, at *1 n.1; *Urena III*, 2025 WL 3154494, at *2; *Urena IV*, 2025 WL 3201761, at *3.  Urena

does not dispute the authenticity of these documents.  Accordingly, this Court will take judicial notice of them in ruling on the City's motion to dismiss.

### C.  Construction of Settlement Agreements

As Judge Furman explained in *Urena II*:

Settlement agreements "are contracts and must therefore be construed according to general principles of contract law."  *Collins v. Harrison-Bode*, 303 F.3d 429, 433 (2d Cir. 2002) (cleaned up).  Here, the Court applies "New York law and federal cases applying New York law in interpreting the release."  *Mateo v. Carinha*, 799 Fed. App'x 51, 53 (2d Cir. 2020) (summary order).  That case law provides that "[w]here the language of [a] release is clear, effect must be given to the intent of the parties as indicated by the language employed."  *Wang v. Paterson*, No. 07-CV-2032, 2008 WL 5272736, at *4 (S.D.N.Y. Dec. 18, 2008) (quoting *Shklovskiy v. Khan*, 273 A.D.2d 371, 372 (N.Y. App. Div. 2d Dep't 2000)).  Moreover, "[w]ords of general release are clearly operative not only as to all controversies and causes of action between the releasor and releasees which had, by that time, actually ripened into litigation, but to all such issues which might then have been adjudicated as a result of pre-existent controversies."  *A.A. Truck Renting Corp. v. Navistar, Inc.*, 81 A.D.3d 674, 675 (N.Y. App. Div. 2d Dep't 2011) (quoting *Lucio v. Curran*, 2 N.Y.2d 257, 161-62 (1956)).  "This is true notwithstanding a party's *pro se* status."  *Staples v. Officer Acolatza*, No. 14-CV-3922 (WHP), 2016 WL 4533560, at [*2] (S.D.N.Y. Mar. 9, 2016); *see also, e.g.*, *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (observing that a *pro se* complaint should be dismissed despite the obligation to construe it liberally if it does not state a plausible claim for relief).

*Urena II*, 2025 WL 2390703, at *1.

### DISCUSSION

Urena's claims here must be dismissed for the same reason his claims were dismissed in *Urena II*, *Urena III*, and *Urena IV*: namely, that they are foreclosed by the plain language of the General Release and Stipulation of Settlement.

Urena admits, as he must, that his claims allege civil rights violations that took place on December 25, 2023. (Pl. Br. at 3). As Judge Furman held in *Urena II*, "[t]he releases that Urena signed released Defendants from liability for any and all alleged civil rights violations arising on or before November 1, 2024, . . . a universe of claims that comfortably encompasses Urena's claims in this case[.]" *Urena II*, 2025 WL 2390703, at *2 (citing General Release). Or, as Judge Vargas put it in *Urena IV*: "The releases Plaintiff executed in *Urena I* unequivocally bar all civil rights actions, including any related state law claims, that Plaintiff might bring against the City of New York or its employees arising from events occurring prior to November 1, 2024. All of Plaintiff's claims in this case fall within the scope of this release. Plaintiff seeks to bring civil rights claims for violations of his Constitutional rights pursuant to section 1983 against the City of New York and officers of the New York [City Department of Correction] for events occurring in December 2023." *Urena IV*, 2025 WL 3201761, at *3.

As Judge Furman noted in *Urena II*, "[c]ourts have routinely dismissed cases in similar circumstances." *Urena II*, 2025 WL 2390703, at *2 (collecting cases). In *Urena III*, Judge Koeltl similarly noted: "Courts in this Circuit have consistently concluded that releases between federal civil rights claimants and the City of New York bar suit against the City and its employees for alleged conduct predating the release." *Urena III*, 2025 WL 3154494, at *2 (quoting *Staples*, 2016 WL 4533560, at *3 (collecting cases)) (cleaned up).

10

Urena advances several arguments as to why the Release should not bar his claims in this action.  Each of these arguments is unavailing.

First, Urena argues that the terms of the Stipulation of Settlement are ambiguous, relying on *Smith v. New York*, No. 12 Civ. 4851 (ERK) (LB), 2014 WL 6783194 (E.D.N.Y. Dec. 2, 2014).  (Pl. Br. at 4–5).  In *Smith*, the court found the applicable release language ambiguous "because, *inter alia*, a limiting provision in the stipulation stated, '[t]his stipulation shall not be admissible in, nor is it related to, any other litigation.'"  *Urena IV*, 2025 WL 3201761, at *4 (quoting *Smith*, 2014 WL 6783194, at *7).  Urena points to similar language in the Stipulation of Settlement here, which he claims suggests the Release was not intended to cover his claims in this case.  (Pl. Br. at 1, 4, 5).

However, as summarized by Judge Vargas in *Urena IV*, "the limiting provision in Plaintiff's Stipulation is noticeably different.  It states, '[t]his stipulation shall not be admissible in, nor is it related to, any other litigation or settlement negotiations, *except to enforce the terms of this agreement*.'"  *Urena IV*, 2025 WL 3201761, at *4 (quoting Stip. ¶ 4) (emphasis in original).  Accordingly, *Urena IV* found the terms of the Stipulation unambiguous.  *Id.*; *see also Urena II*, 2025 WL 2390703, at *2 (finding *Smith* to be "inapposite" due to the same language, and concluding that, by its terms, "the agreement in [Urena's] case—including the releases—can be enforced in other litigation"); *Urena III*, 2025 WL 3154494, at *2 (finding the Stipulation "clear and unambiguous on its face" (quoting *Haymount Urgent Care PC v. GoFund Advance, LLC*, 609 F. Supp. 3d 237, 254–55 (S.D.N.Y.

11

2022)).  This Court likewise finds that the Stipulation unambiguously permits the City to enforce the Release in this case.

Urena also argues that the Release is rendered ambiguous by the fact that the Stipulation and Order of Dismissal in *Urena I* "does not reference any case other than the one being released."  (Pl. Br. at 5).  But there was no reason for that Stipulation to reference any other case, because it was filed only to effectuate the dismissal of the *Urena I* case.  In any event—and contrary to Urena's assertion that he signed the settlement documents in *Urena I* on November 1, 2024 "during the pendency of the instant suit"—this action was *not* pending as of November 1, 2024.  It was not filed until January 15, 2025.  (Dkt. No. 1).  Accordingly, this case did not exist at the time Urena signed the *Urena I* settlement documents and it could not have been referenced in those documents.

Second, Urena argues that the Release was the product of "fraud" and/or "trickery" against him.  (Pl. Br. at 5).  He claims that opposing counsel in *Urena I* had "at least constructive knowledge" of Urena's other pending cases at the time of the *Urena I* settlement, yet failed to address them in the settlement.  (Pl. Br. at 5).  As a result, Plaintiff "may have unknowingly released pending claims other than the claim [he] was settling."  (*Id.* at 6).

However, Judge Furman rejected this exact same argument in *Urena II*.  As Judge Furman reasoned, "'[t]he intent of the parties to release the present claim is clear from the unambiguous and broad language of the release.'  The Court 'fully understand[s] that [Urena] might not have *actually* understood [the Release] to

cover his pending federal claims,' but 'New York law proscribes such considerations.'" *Urena II*, 2025 WL 2390703, at *2 (first quoting *Mateo*, 799 F. App'x at 54, and then quoting *Caraballo v. City of New York*, 2025 WL 1430152, at *3 (2d Cir. May 19, 2025) (summary order)) (emphasis in original).  Further, as Judge Furman also noted, whether defendants in *Urena I* had knowledge of the other pending actions "has no bearing on the proper interpretation of the releases." *Id.*; *see also Urena IV*, 2025 WL 3201761, at *4 ("Besides making conclusory allegations involving the words 'trickery' and 'fraud,' Plaintiff does not allege facts that could support any of the five elements required for fraud.").  Urena's argument in this case suffers from the same deficiencies, and one more: As noted above, this case was *not* pending at the time of the *Urena I* settlement.  Nor does Urena allege that Corporation Counsel otherwise knew about Urena's potential claim.  Thus, at the time of the *Urena I* settlement, Corporation Counsel could not have had any knowledge, constructive or otherwise, of Urena's claims in this case.

Next, Urena argues that the value of the settlement, $10,000, was "arguably insufficient" to justify the broad language of the Release, requiring that the Release be read to cover only the claims brought in *Urena I.*  (Pl. Br. at 6).  But this argument is similarly untenable.  As Judge Furman noted in *Urena II*, "'the adequacy of that consideration (rather than its legal sufficiency) is not a proper subject for judicial scrutiny.'"  *Urena II*, 2025 WL 2390703, at *2 (quoting *Gupta v. Headstrong, Inc.*, No. 17 Civ. 5286 (RA), 2018 WL 1634870, at *3 (S.D.N.Y. Mar. 30,

13

2018)); *see also Urena IV*, 2025 WL 3201761, at *4 (rejecting the same argument

because Urena "fails to allege facts that meet the standard of unconscionability").

Similarly unavailing is Urena's argument that he "acted without an attorney"

in signing the settlement documents in *Urena I*. (Pl. Br. at 6). "General releases

are enforceable as to civil rights claims . . . notwithstanding a party's *pro se* status."

*Staples*, 2016 WL 4533560, at *2. To the extent that Urena did not properly

understand the scope of the Release, that "does not change [the] analysis or the

outcome" because it is "'the unambiguous language of the General Release, rather

than [Urena's] subjective understanding, [that] controls.'" *Johnson*, 2023 WL

5629232, at *5 (quoting *Dinkins v. Decoteau*, No. 15 Civ. 8914 (GHW), 2016 WL

3637169, at *3 (S.D.N.Y. June 29, 2016)); *see also Genao v. Ruiz*, No. 24 Civ. 2077

(LJL), 2025 WL 219160, at *6 (S.D.N.Y. Jan. 16, 2025) ("Plaintiff's *pro se* status

when he executed the settlement agreement does not alter the analysis."), *appeal

filed*, No. 25-489 (Mar. 4, 2025).

Finally, Urena argues that the district judge in *Urena I* failed to adequately

scrutinize the Stipulation of Settlement, instead "simply rubberstamp[ing]" it,

which demonstrates a "lack of judicial oversight." (Pl. Br. at 6). However, as in

*Urena II*, Urena "offers no factual support for that assertion, which, in [any] event,

has no bearing on the force or effect of the releases." *Urena II*, 2025 WL 2390703, at

*2. Urena's premise—that the district judge in *Urena I* was supposed to exercise

some form of oversight over the parties' private settlement—is mistaken. *Urena I*

was not one of the relatively few types of cases that require judicial approval of a

settlement.  *See In re N.Y.C. Policing During Summer 2020 Demonstrations*, No. 20 Civ. 8924 (CM) (GWG), 2024 WL 476367, at *6 (S.D.N.Y. Feb. 7, 2024) (noting "the usual rule that courts approve private settlements only in very specific cases and when authorized by statute").

This Court finds no reason to depart from the holdings or reasoning set forth in *Urena II*, *Urena III*, and *Urena IV*.  Here too, Urena's claims are plainly foreclosed, as a matter of law, by the terms of the Stipulation of Settlement and General Release.  Accordingly, the Court recommends that the City's motion to dismiss be granted.[7]

In addition, "[w]here, as here, the reasons for dismissal apply equally to all defendants, and the plaintiff has had notice and a full opportunity to be heard, *sua sponte* dismissal of claims against defendants that have not yet been served and have not appeared is appropriate."  *Andrew v. J.P. Morgan Chase & Co.*, No. 18 Civ. 4421 (DLC), 2018 WL 4926440, at *4 (S.D.N.Y. Oct. 9, 2018); *see also Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.6 (2d Cir. 1990).  Although the other Defendants in this case have not yet appeared and did not join the City's motion to dismiss, the claims against them are equally barred under the terms of the Release, which applies not only to claims against the City, but also to claims

---

[7] Because Urena's claims are clearly barred by the Release, it is unnecessary for the Court to address the City's other arguments for dismissal of the Complaint.  *See Perry v. Half Hollow Hills Cent. Sch. Dist.*, No. 20 Civ. 5656 (JMA) (ARL), 2022 WL 22270717, at *11 (E.D.N.Y. Sept. 13, 2022) ("Because the Court finds Plaintiff's claims are barred by the Settlement Agreement and otherwise time-barred, it is unnecessary to address Defendants' argument that all of Plaintiff's claims also fail on the merits."), *aff'd*, 2024 WL 120102 (2d Cir. Jan. 11, 2024); *see also Urena III*, 2025 WL 3154494, at *2–3 (granting motion for judgment on the pleadings solely on the basis of the Release without reaching defendants' alternative grounds for dismissal, *see Urena III*, Dkt. No. 31 at 7–13).

15

against "all past and present officials, employees, representatives, and agents of the City[.]" (Stip. ¶ 2; Gen. Rel. at 1). Accordingly, the Court recommends *sua sponte* dismissal of the claims against the individual Defendants as well. *See, e.g.,* *Newman v. Park*, No. 24 Civ. 6829 (JPC) (JW), 2025 WL 2350259, at *1 (S.D.N.Y. Aug. 14, 2025) (adopting magistrate judge's recommendation that claim against non-appearing defendant be dismissed *sua sponte* where "the reason for denying the [claim] . . . applies to all three Defendants"); *In re Parmalat Secs. Litig.*, 377 F. Supp. 2d 390, 415 n.166 (S.D.N.Y. 2005) (*sua sponte* dismissing claim against non-moving defendant where plaintiff "has had ample notice that dismissal of this claim is sought on the ground of legal insufficiency and has had the opportunity to respond to the arguments of the [moving] defendants").

The Court further recommends that Urena not be granted leave to amend his Complaint. As in his prior cases, "the defects in Urena's claims are substantive, so amendment would be futile." *Urena II*, 2025 WL 2390703, at *3; *see also Urena IV*, 2025 WL 3201761, at *5 ("Since Plaintiff's claims are barred as a matter of law, amendment is futile."). Urena makes no allegations relating to events occurring after November 1, 2024, nor has he suggested any other additional facts that might cure the defects in his claims. Accordingly, amendment would be futile.

## CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that the City's motion to dismiss be **GRANTED** and that this action be **DISMISSED**.

**SO ORDERED.**

DATED:      New York, New York
            January 5, 2026

_____
The Honorable Gary Stein
United States Magistrate Judge

## NOTICE OF PROCEDURE FOR FILING OBJECTIONS
## TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. Section 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen days, inclusive of weekends and holidays, from the date of this Report and Recommendation to file written objections thereto. *See also* Fed. R. Civ. 6(a), (b), and (d). Any such objections shall be filed with the Clerk of Court. Any request for an extension of time to file objections must be directed to the Honorable John P. Cronan. A failure to file timely objections will preclude appellate review. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

17